At this time, we'll hear Fidelity Brokerage Services versus Deutsch. May it please the Court, Howard Graf for the appellant. I'd like to initially focus on the stock picker rule relied upon by the FINRA panel. According to the award, the refusal to accept the Deutsch's CMED orders on or after July 16th, and that's an important date, and this is a quote, was the only argument he, Peter Deutsch that would be, can make for any recovery against Fidelity since the firm made no recommendations to him regarding CMED. That's what I've been calling a stock picker rule. But that stock picker rule collides directly with Second Circuit authority. I thought the decision of the arbitral panel was that there was no way that damages could be proved here. I thought that was the basis of their decision. Am I wrong about that? Yes and no. I'm wrong, but I'm not wrong. Yes. Okay. They ruled that there was no causation, effectively, for what happened after July 16th. Yes. They ruled that because of that, we couldn't prove our expectation damages. Right. What the panel did is then took a period of time, which they denominated as the passive investment period, and that was March through June, and they said, we're not going to even consider that because, as they say, Fidelity was not recommending the shares. So they didn't say they're not going to consider it. They considered it and said that it loses because of the stock picker rule. Well, they sort of did both. Well, no, come on. The court says this is no good because of this rule. That's not not considering it. That's not saying, oh, this is beyond our jurisdiction, or we don't care about that, or we're just not interested, or we just forgot that claim and omitted it. They made a decision on the merits. They made a decision. They made a decision to consider only the fiduciary and contract claims and include that. That's what the language says. After July 16th, because, and then they explained why. And you're correct that that explanation could be the decision. And I'm not going to dispute that. The explanation is the stock picker rule. And you're saying they were wrong as a matter of law. I'm saying not only were they wrong as a matter of law, I'm saying that rule that was applied manifestly disregarded. No, no, no. Manifest disregard means someone said to them, here's what the rule is, and they didn't just misapply it. They said, we don't care about that rule. We're going to decide our own thing. And that's exactly what happened here. Really? Why is that different? When they explained how they applied this rule. Now, that may be right or that may be wrong. But they're the arbitrators, and they are entitled to be wrong. So long as they don't sort of spit in the eye of the rules. Okay. Here are the rules they spit in the eye of. First, the fiduciary duty precedent of this circuit. That precedent was articulated repeatedly to this panel. What's the principle? What's the principle that they disregarded? The principle that is in the Wolfson case effectively. Just state the principle. Basically, the principle is that a fiduciary relationship is created based on an entrustment. And Wolfson basically holds that. You don't have to be a stock picker. There can be all sorts of things you're entrusted to do. At that point. Tell me what is the thing that they were entrusted to do. Okay. From March through June, they were entrusted to implement the Deutsch's aggressive acquisition campaign of CMEB. They acquired over 40 million shares, $40 million of stock. They did as they said they would. Introduce different vehicles for the Deutsch's to acquire the stock.  And they gave them what they called high-touch services. So during that period, they were acting as a fiduciary unquestionably. And so there were obligations. What did they entrust them with? They entrusted them with the acquisition of the shares, with the acquisition of shares off the market, with the dark pool obligations. And they were encouraged to entrust them in that way because of the. Then why isn't a fiduciary obligation created by any contract? Because not all. You're entrusting somebody to perform the contract. When they don't perform it, then they were entrusted to do it, but they didn't do it. Well, not all contracts involve fiduciary duties. Interestingly enough, if I sell you a car, I'm not. Notorious. That trade is not a fiduciary trade. But in this case, when the Deutsch's joined family office, promises were made, specifically contractual promises. Promises that were similar to those that fidelity is included in lobbying letters in terms of the way they're created. And the promises included client first, no conflict, institutional trading. Those are, as Professor Hazen has written about, fiduciary-like promises. Why doesn't the damages ruling still cover that? This seems even more remotely contingent than the causation problem with the later events. Basically, your guys invested in a Chinese company incorporated in the Cayman Islands on the basis of their financial statements in the face of a ton of red flags, either on the theory that they didn't believe those red flags or on some kind of theory that somehow other people would be fooled by their aggressive investment into buying into this fly-by-night company where everybody winds up going to jail. And somehow you'd be able to get out first by selling off the stocks. What is the theory of how the damages are caused? There are two theories. First, the prophylactic damage rule, which is well-settled law in this circuit. It stems from Judge Cardozo's opinion in Meinhardt v. Solomon. And that dispenses of the causation requirement with regard to fiduciary action. You're arguing this as if it were an appeal from a district court judge that the law was misapplied and that they didn't really do it right in making this analysis. No, because in this case, and this record is replete with this, in this case, we articulated these standards. They were clearly developed for this panel. The panel responded when we said you need to apply these standards, which would include the prophylactic damage rule. So, in fact, a faithless fiduciary always has to disgorge profits it made. Fidelity should at least have to give back the profits it was making or the money it was making while it was working for our clients and breaching its fiduciary duty. When we brought these principles to the arbitrator's attention, the arbitrator's response was we don't follow precedent. And that wasn't a stray remark. There was an extensive colloquy. I then said to the arbitrators, but wait, I think arbitrators have to follow established precedent. And if they don't and manifestly disregard the precedent, well, the arbitrator said to us, go appeal. And this is the exact precedent. They basically looked at the precedent that we articulated, which included that there was a fiduciary relationship, that contractual promises, including fiduciary-like promises, were made. And they basically turned their back on this circuit. And in this case, it's very similar in some ways to the New York telephone case. In that case, an arbitrator turned his back on Second Circuit authority in favor of other circuits' authority. And he said, let them figure it out. That arbitration award was vacated. In this case, the arbitrator, in the face of all these, of this law, said basically the same thing. We don't have to follow this precedent. You go appeal. So essentially, what happened in this case is that the arbitrator essentially thumbed his nose at existing precedent, and particularly the prophylactic damage rule, for example, that was all cited to him, all addressed, and to make it worse, these principles all were basically shunned aside based upon the stock picker rule. You've reserved a minute's rebuttal, and you're starting to repeat the arguments that we already have. Okay, thank you. Good morning, Your Honors, and may it please the Court. My name is Mark Knoll from Bressler Amory & Ross on behalf of Appellees, Fidelity Brokerage Services, and National Financial Services. Your Honors, this appeal, the decision of the district court should just be affirmed on the opinion below by Judge Buchwald, which was very carefully thought out and very well reasoned. In confirming the award, the district court declined the very same invitation that's being extended to the panel today. That is, the court below affirmed that its job was not to micromanage the panel, but to confirm that it committed no misconduct that would merit vacating the award. She did her job admirably. The panel did its job admirably after 50 days of hearing over the course of five years' worth of litigation. And the arguments being presented to the court today are simply disagreements with the outcome of the arbitration. That is all this is. Could you respond directly to Mr. Grant's argument that the arbitrators said we don't care about the rules? First off, Judge Buchwald specifically identified this blah-blah-blah language that they referred to in the briefs as being taken wildly out of context. When you look at the briefs and you look at the opinion below, Arbitrator Anderson was specifically inviting Mr. Graf and counsel for the Deutsches to present whatever legal arguments, whatever precedent they believe should apply, whatever conditions, whatever legal arguments they wanted to make in their briefs, which they did. The argument that the statement that he's referring to is the blah-blah-blah statement? Yes. He's shaking his head no, so I guess we'll hear from him in a minute. There was also a statement by the chairman of the panel, Mr. Biederman, that said we don't have to follow precedent. We are guided by it, but we don't have to follow it, which is true. An arbitration panel is free to make its determinations on certain matters. But let's focus on exactly what he's saying was the precedent that was violated here, this prophylactic damages rule. Two points on this. First, the panel absolutely considered the claims for breach of contract and breach of fiduciary duty that arose during this timeframe between Why didn't Fidelity act on their instructions? They did. To purchase more of this stock. They did. Until July 2012. I know. But then they didn't. Why did they not do it when they did not do it? Because they had concerns that they were engaged in stock manipulation. And that decision to not follow instructions there is one that is within the period that was directly addressed in the causation opinion. Well, the causation opinion actually encompassed the entire investment scheme, right? I thought so. But taking Mr. Graff's breakdown of the periods, the decision at the end of this whole process to call a halt, am I wrong that that occurred during the period that he says is covered by the No, that would have occurred after. The periods that he is describing, and it's sort of an arbitrary cutoff, is the July 16th decision to not accept any additional purchase orders for China Medical. That was made after the stock came back and was available for trading after the SEC halt, and Fidelity, for all the concerns that it had, decided not to allow continued purchases of the shares. He's not alleging in this appeal that that decision was improper, it didn't follow precedent, it wasn't permissible. The time period between, say, January and that decision, that he is alleging that there was the contract in place, which there was, that the firm had duties to accept certain orders, absolutely. Between January and July of 2012, every order that Mr. Deutsch placed to buy China Medical, Fidelity accepted, processed, and he bought the shares. I thought from the briefs that what the appellant was arguing about that period that Fidelity is alleged to have done wrong was that they were lending some of these shares to somebody else, to short sellers. That's exactly right. That actually is the grovelment of the entire breach of fiduciary duty and breach of contract claim. When you look at their pre-closing brief, so the panel after testimony was heard, they allowed the sides to present briefing prior to oral argument at closing. In that pre-closing brief, they repeated over and over again what the basis for their breach of contract and breach of fiduciary duty claims in that earlier period were. And it all fell down, it all came down to the alleged illegal lending claims. And the arbitration panel absolutely took those claims into consideration. They absolutely said, fine, we understand all of that. But regardless of that, whatever their investment strategy was, was doomed to fail from the start. Their investment strategy itself was doomed to fail because of all of the issues surrounding China Medical. Now, that independent determination that there are no damages that can be connected in any way, shape, or form to anything Fidelity did or did not do solves this entire appeal. I mean, I think that one of the things that's very important to keep in mind here is that the factual finding by Judge Buchwald as to what the award actually says. And the award actually says any and all claims raised by the claimants in the course of the arbitration are denied. It says it plainly. And then it goes out in separate language to provide more information. Nobody asked them to. Which they weren't required to do at all. Exactly. Nobody asked them to do this. They decided to go ahead and do this in order to provide additional detail and additional background. And actually, in the first case cited by the appellants in their reply brief, which is the United Steelworkers v. Enterprise Wheel case, they cite that for the proposition that where an arbitrator imperfectly executes their obligations, that that's grounds for vacation. I agree. But that specific decision specifically says, a mere ambiguity in the opinion accompanying an award which permits the inference that an arbitrator may have exceeded his authority is not a reason for refusing to enforce the award. In fact, arbitrators have no obligation to the court to give their reasons for an award and to require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. Now, what the Supreme Court there is saying, in a case that actually reversed a decision of this court back in the 60s, you know, that reversed a district court opinion. Yeah, they weren't as good then. Exactly. Exactly. What the Supreme Court there basically said is, you are not to micromanage the panel when they do provide opinions so long as the district court's interpretation of that award is not clearly erroneous. Right? That's what the New York Stock Exchange v. Shearson-Lehman case that I cited to you holds. That's also what a more recent case called Connecticut Technology holds, which is at, I can provide the site to the court if it likes. Those sorts of determinations are findings of fact by the district judge where she essentially looked at all the matters. She said everything was submitted to the panel that the claimants wanted to submit to the panel. They reached their determination because they felt nothing Fidelity did or did not do caused their damages. Now, this notion about this prophylactic rule that says if you find any sort of a breach of fiduciary duty, you have to award some sort of damages, I'm telling you, that's pretty novel. In the case they cite in their appellate brief for ABCO, right, which is the George Harrison, my sweet lord, you know, copyright infringement case, the remedy that was sought in ABCO was a constructive trust. So, you know, Judge Buchwald was very clear and very accurate in her statement that breaches of fiduciary duty require everything that we've always understood they require, you know, the existence of the duty, the breach, and causation and damages. And I take it the contract with Fidelity requires arbitration as a method of dispute resolution. Yes, all brokerage contracts in the industry do. Thank you. Thank you very much. We'll hear rebuttal. A few things. The prophylactic damage rule is hardly new. It stems back from Judge Cardozo. And in the ABCO case, they specifically rejected the standard for proximate cause when there's a fiduciary duty breach and explained why. Don't have time now to go through it, but this is the law for years. It was put to the arbitrators. They just ignored it. The second thing is how they ignored it. So I've said that the stock picker rule is something that they used to say, okay, we're not going to look at the period of time from March to June because the only thing that you can have a claim on is after July 16th. And I agree with Your Honor that that part of the case is out. But with regard to what happened before and the application of the prophylactic damage rule, it is not. With regard to reliance damages, it is not. And it is not so that this blah, blah, blah statement, which was directed at Judge Wachler, which was really sarcastic, that's not what we're talking about here. When we presented this proof, this is the colloquy. It means second circuit authority. You should accept the second circuit authority because that, the arbitrator. Arbitration doesn't have to follow precedent. We follow the law, but we don't follow precedent. Mr. Graf, I think arbitrators have to follow clear and established precedent. And if they don't and manifestly disregard, then we would just disagree. And the panel says go appeal. And then while we're talking about- They didn't agree that they were manifestly disregarding. Yes. They said if we manifestly disregard, so go appeal. That's what trial judges say every day. And what we're saying is that they've manifestly disregarded in three respects law that was presented to them clearly. First, the fiduciary duty law with regard to that first period. The stock picker rule was used by this panel to trump basically second circuit authority. It trumped the Wolfson case. So if they're saying we're applying this rule rather than that rule and they're wrong, that's not the same thing as saying we don't care what the law is. That's getting the law wrong. That's saying this rule trumps that rule. Maybe they're wrong. But you folks, sophisticated investors, signed up to have a brokerage firm knowing that you're going to be in arbitration. You know, I mean, this is the way the world works. Yes. You decide, you know, it goes to arbitration. You don't have the same rights that you have if you're quibbling with what a district court does, and we have de novo review of whether the district court correctly applied this rule rather than that rule. You're in a very different world here. I understand that. First of all, I think there is de novo review of the district court's decision. I don't have time for that. It's not clearly erroneous. There were no factual determinations. But more significant to your point, Your Honor, this is not a case where they analyzed and said we'll do this or this or the other. This is a case where they were presented with the common law. This is a case where when we signed the arbitration agreement, we had every expectation that this circuit's authority, that the precedent would be applied, or at least they would try to apply it, and they wouldn't instead apply a stock picker rule. And here's one other manifestation of that in the record. So while they had their FINRA expert testify, who said basically it's never about client first, after we were trying to prove client first promises, conflict-free promises, fiduciary-like promises, while he's testifying, under FINRA, that doesn't matter. Well, here's what the arbitrator said. I'm sorry. We can't start the argument all over again. No, no. Thank you. Thank you both. We will reserve decision. And in the case of Harrell v. Commissioner of Internal Revenue, we will take that on submission. In the case of United States v. Bolling, we take that on submission. That's the last case on calendar. Please adjourn court.